**Affirmed and Memorandum Opinion filed August 13, 2019.**



**In the**

# Fourteenth Court of Appeals

**NO. 14-18-00603-CR**
**NO. 14-18-00604-CR**

**ANGELA BACKER, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1 & Probate Court**
**Brazoria County, Texas**
**Trial Court Cause Nos. 225582 & 225583**

## MEMORANDUM OPINION

The issue in these appeals is whether a detention following a traffic stop violated the Fourth Amendment.

Appellant Angela Backer pleaded guilty to possession of marihuana (trial court cause number 225582 and appellate case number 14-18-00603-CR); and the trial court assessed punishment at 180-days confinement and a $500 fine, suspended the sentence, and placed appellant on 12-months community supervision. *See* Texas

Controlled Substances Act, Tex. Health & Safety Code Ann. § 481.121(a), (b)(1). Appellant also pleaded guilty to unlawful carrying a weapon (trial court cause number 225583 and appellate case number 14-18-00604-CR), and the trial court assessed punishment at 3-days confinement in jail and a $400 fine. *See* Tex. Penal Code Ann. § 46.02(a-1) (Supp.). The trial court certified appellant's right to appeal in both cases, and appellant appeals both judgments. We affirm.

### BACKGROUND

On the evening of October 21, 2016, Officer Shoemake with the Alvin Police Department was patrolling State Highway 35 in Brazoria County. Shortly after 8:51 p.m., Shoemake pulled over appellant for driving 79 miles per hour in a 55 mile-per-hour zone. Shoemake approached the driver's side of the vehicle and asked appellant for her driver's license and insurance information. Appellant provided Shoemake with her insurance. While appellant was looking for her driver's license, Shoemake noticed a plastic "baggie" in her purse, but could not identify its contents. He observed appellant "push" the baggie down into her purse, where he would be unable to see it. When appellant opened another compartment of her purse, Shoemake observed a pistol magazine and assumed appellant had a weapon in her vehicle.

After appellant located her driver's license and gave it to Shoemake, he asked her to exit the vehicle. As she exited, appellant rolled up all the windows and used her key fob to lock the vehicle. Shoemake asked whether appellant had a weapon in the vehicle and whether she possessed anything else possibly illegal.[1] Shoemake visually inspected appellant's pockets and waistband, and did not see any weapons. Shoemake requested permission to search appellant's vehicle. Appellant initially

---

[1] At the hearing on appellant's motion to suppress, Shoemake did not indicate how appellant responded. The affidavit Shoemake provided for appellant's unlawful-carrying-weapon complaint states appellant told Shoemake that she had a gun not in her name which was a gift "in the driver's side floor" and that there was nothing illegal in her vehicle.

granted her consent to search the vehicle. But then she withdrew her consent and requested to speak to her attorney. Shoemake advised appellant "that was her right."

Shoemake contacted dispatch to request a canine unit. Dispatch estimated that a canine unit could arrive in fifteen minutes. While waiting for the canine unit, Shoemake worked on appellant's speeding citation, which could not be issued until he completed additional information about the search.[2] He conducted a computer check, which took a few minutes and did not reveal any warrants on appellant. Shoemake also approached appellant and asked whether she had been able to contact her attorney. While still on the phone, appellant responded that she was still unsure whether she wanted to consent to a search.

Officer Green, an officer with the canine unit of the Alvin Police Department, arrived at the scene at 9:28 p.m., approximately 22 minutes after Shoemake contacted dispatch.[3] The dog "alerted" on the vehicle, indicating the presence of drugs.[4] A search of appellant's vehicle revealed two firearms. A search of appellant's purse revealed a plastic bag containing about 3.3 grams of marihuana.

Appellant was arrested and charged with possession of marihuana and unlawful carrying a weapon. Appellant filed a motion to suppress the evidence

---

[2] Appellant's citation was not issued to her until after she had been arrested and taken to jail.

[3] Appellant contends that the canine unit arrived "40 minutes after Officer Shoemake had issued the citation for excessive speeding to [a]ppellant." *But see supra* note 2. Appellant also contends that the canine unit arrived "almost 40 minutes after Officer Shoemake called for a K9 unit and 48 minutes after the stop." Shoemake, however, testified that the canine unit arrived "[l]ike 22 minutes" after he contacted dispatch. From the time Shoemake pulled over appellant at 8:51 p.m. to the time the canine unit arrived at 9:28 p.m., 37 minutes had elapsed.

[4] Appellant does not dispute that the dog "alerted." *See Medina v. State*, 565 S.W.3d 868, 876 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (once dog "alerts," police have probable cause to arrest for possession of controlled substance and authority to search vehicle for evidence of controlled substance).

seized from her vehicle as to both charges. She argued that in detaining and arresting her, the police violated her rights under "the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure."[5]

The trial court held a suppression hearing. Appellant and Shoemake testified, and the trial court admitted dash-cam video of the stop. The trial court denied appellant's motion and issued findings of fact and conclusions of law. The trial court concluded: (1) Shoemake did not extend the traffic stop because the citation was not yet issued and appellant was supposedly on the phone with her attorney during the period before the canine unit arrived; and (2) Shoemake had reasonable suspicion of criminal activity based on appellant's attempt to conceal the plastic bag, the presence of a firearm magazine in her purse, appellant's rolling up her windows and locking her doors upon exiting her vehicle, and appellant's initially granting, then rescinding consent to search.

### ANALYSIS

## A. Standard of review

When reviewing a trial court's ruling on a motion to suppress, we view all the evidence in the light most favorable to the ruling and afford all reasonable inferences in favor of the ruling. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford great deference to the trial court's finding of historical facts. *Id.* The trial court is entitled to believe or disbelieve all or part of a witness's testimony because the judge can observe the witness's demeanor and appearance. *Id.* Second,

---

[5] Appellant only raises a Fourth-Amendment challenge on appeal.

we review de novo the trial court's application of the law to the facts. *Id.* We must sustain the trial court's ruling if the record reasonably supports it and the ruling is correct on any theory of law applicable to the case. *Id*. at 447–48.

**B. Applicable law**

Whether "reasonable suspicion" exists to justify a temporary investigative detention is subject to the two-prong *Terry v. Ohio* analysis. To determine the reasonableness of an investigative detention, courts must inquire: (1) whether the officer's action was justified at its inception and (2) whether the stop was reasonably related in scope to the circumstances that justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968).

Under the first *Terry* prong, the officer must be able to point to specific and articulable facts which, based on his experience and personal knowledge, and taken together with rational inferences from those facts, reasonably warrant that intrusion. *See id.* at 21. An officer has reasonable suspicion to detain if such facts would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in some kind of criminal activity. *Derichsweiler v. State*, 348 S.W.3d 906, 914, 916–17 (Tex. Crim. App. 2011). In determining whether an officer acted reasonably, we give due weight, not to the officer's inchoate and unparticularized suspicion or "hunch," but to the specific, reasonable inferences that he is entitled to draw from the facts in light of his experience. *See Terry*, 392 U.S. at 27. A reasonable-suspicion determination is measured in objective terms by examining the totality of the circumstances. *Derichsweiler*, 348 S.W.3d at 914. We disregard the actual subjective intent of the arresting officer. *Id.*

Under the second *Terry* prong, an investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *See Florida v. Royer*, 460 U.S. 491, 500 (1983). However, certain unrelated investigations are

constitutionally permissible when they do not unreasonably lengthen the roadside detention. *See, e.g., Arizona v. Johnson*, 555 U.S. 323, 327–28, 333 (2009) (additional questioning); *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (dog sniff). Once the purpose for the traffic stop is concluded, the officer must not unnecessarily detain the driver. *See Kothe v. State*, 152 S.W.3d 54, 64 (Tex. Crim. App. 2004). But an officer is entitled to rely on additional information obtained during a lawful stop in developing articulable facts that would justify a continued detention. *See Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979). There is no rigid time limitation on *Terry* investigative detentions. *See Kothe*, 152 S.W.3d at 65. Instead, in assessing whether a detention extends beyond a reasonable duration, we consider "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985).

## C. Appellant's investigative detention

Appellant does not dispute the validity of the initial traffic stop. Rather, appellant contends that the arresting officer extended her traffic stop to conduct a dog sniff based on his "unparticularized suspicion or hunch," instead of any reasonable suspicion, and thus violated her Fourth Amendment right against unreasonable search and seizure. We disagree.

Appellant emphasizes Shoemake's use of the word "hunch": specifically, that Shoemake stated during cross-examination he "had a hunch that [appellant] had something in her car." The law is clear that a stop is unconstitutional when the only evidence in the record is an officer's mere "inchoate and unparticularized suspicion or hunch." *Foster v. State*, 326 S.W.3d 609, 613 (Tex. Crim. App. 2010) (citing *Terry*, 392 U.S. at 21). However, the law is equally clear that there is no

constitutional violation when an officer presents some minimal objective justification for the stop based on specific, articulated facts, as supported by rational inferences. *See id.* For example, considering the totality of the circumstances, based on the trooper's experience and knowledge, and articulated facts about the defendant's aggressive driving and the time of night and location of the stop, the *Foster* court concluded that the trooper's investigative detention for a DWI enforcement officer to arrive and conduct field-sobriety testing was objectively justified. *See id.* at 614.

Appellant also emphasizes testimony by Shoemake agreeing that having a plastic baggie or a pistol magazine in one's purse is not illegal. However, it is immaterial that individual facts considered in isolation may appear purely innocent because a determination of reasonable suspicion must be based on the totality of the circumstances. *Hill v. State*, 135 S.W.3d 267, 271–72 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *cf. Foster*, 326 S.W.3d at 613 (Texas courts refuse to apply "as consistent with innocent activity as well as criminal activity" standard). We also keep in mind the level of reasonable suspicion under a *Terry* stop is less demanding than that of probable cause for the issuance of a warrant, so reasonable suspicion may be based on something less than "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (probable-cause-for-warrant standard); *Hill*, 135 S.W.3d at 272.

At the suppression hearing, Shoemake articulated some specific, objective facts to support his reasonable suspicion that appellant may have been engaging or planned to engage in criminal activity involving contraband. Instead of only a subjective "hunch," the record contains Shoemake's objective observations to justify appellant's continued detention. Appellant does not challenge the trial court's findings of fact concerning her conduct during the stop. Based upon his training and

experience as a peace officer,[6] Shoemake testified that when somebody tries to hide something during a traffic stop, it tends to indicate "illegal activity is afoot." Appellant attempted to hide a plastic baggie in her purse. *See Wiede v. State*, 214 S.W.3d 17, 27–28 (Tex. Crim. App. 2007) (considering appellant's attempt to hide plastic baggie in furtive gesture after car accident). Shoemake stated it was "odd" and atypical that appellant locked her car and rolled up her windows when leaving her vehicle during the traffic stop. This behavior "made [him] think that there might be something illegal going on." The presence of the pistol magazine in appellant's purse also "led [Shoemake] to believe there was some type of narcotics or something in the vehicle." Shoemake testified he also found it "odd" that appellant granted consent to search and then immediately withdrew it. *See Hill*, 135 S.W.3d at 270–71 (considering appellant's nervous behavior in providing, then withdrawing consent). Based on our review of the totality of the circumstances, in light of Shoemake's experience and knowledge, together with rational inferences drawn from the facts, we conclude that Shoemake had reasonable suspicion to pursue his investigative detention of appellant.

We likewise disagree with appellant's contention that Shoemake "unlawfully prolonged the traffic stop." Appellant makes no claim that Shoemake was dilatory in his investigation. Rather, based on a statement in Shoemake's complaint affidavit, appellant argues that Shoemake had already "completed" her traffic citation before the canine unit arrived. But the record reasonably supports the trial court's findings: while he was waiting for the canine unit, Shoemake was working on the traffic citation and appellant continued to talk on her cell phone; no citation was issued until appellant reached the jail; and the canine unit arrived 22 minutes after Shoemake called. In other words, Shoemake reasonably and diligently pursued a means of

---

[6] Appellant does not challenge Shoemake's level of police training or experience.

investigation that was likely to quickly confirm or dispel his suspicions about the presence of contraband. *See Sharpe*, 470 U.S. at 686–88. He did not delay in requesting a canine unit from dispatch; he requested the unit as soon as appellant withdrew her consent to search. In the meantime, Shoemake not only was working on appellant's citation, but also was waiting for appellant to finish speaking with her attorney and come to a decision regarding consent to search.[7] Under these circumstances, we conclude that Shoemake did not unreasonably extend appellant's detention. *Compare Sims v. State*, 98 S.W.3d 292, 294, 296–97 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (no constitutional violation in investigative detention when canine unit arrived 20 minutes after officer issued warning citation), *with United States v. Place*, 462 U.S. 696, 707–09 (1983) (90-minute detention of defendant's luggage to await drug dog was prolonged seizure that exceeded limits of *Terry* stop); *see also Sharpe*, 470 U.S. at 686–88 (declining to "establish a per se rule that a 20–minute detention is too long" under *Terry*).

## CONCLUSION

We conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress. Accordingly, we overrule appellant's sole issue and affirm the trial court's judgments.

/s/ Charles A. Spain
Justice

Panel consists of Justices Wise, Zimmerer, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[7] In addition, appellant's sister arrived at the scene "to pick up [appellant's] vehicle" about one minute before the canine unit.